THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Department of Social Services, Respondent,
 v.
 Crystal S., Lynette B., and Victor F., Defendants, of whom Victor F. is Appellant.
 In the interest of: Theresa S.[1] (Born 5/25/02); Minor child under the age of 18.
 
 
 

Appeal From Spartanburg County
 Georgia V. Anderson, Family Court Judge
Unpublished Opinion No.  2007-UP-353
Submitted July 2, 2007  Filed July 12, 2007
AFFIRMED AS MODIFIED
 

 
 
 
 William Cory Hughes, of Greenville, for Appellant.
 Deborah Murdock, of Greenville, for Respondent.
 Hattie Darlene Evans Boyce, of Spartanburg, Guardian Ad Litem.
 
 
 

PER CURIAM:  In this family court action, Victor F. (Father) appeals the family courts order removing Theresa S. (Child) from his custody.  Father argues the family court should not have removed Child because it did not find that he abused or neglected her.  Father further argues the family court did not comply with the statutory requirements that mandate the Department of Social Services (DSS) make reasonable efforts to prevent Childs removal.  Fathers final argument is the family court failed to consider the appropriate factors in determining removal was in Childs best interests.  We affirm as modified.
FACTS
This case commenced on April 1, 2006, when Crystal S. (Mother),[2] a minor child of age 17, entered the custody of DSS upon accusations of inappropriately touching a five-year-old male.  Thereafter, DSS learned Mother had a three-year-old daughter who at that time was living with her paternal great grandmother, Lynette B. (Great Grandmother).[3]  At a hearing on April 3, 2006, the family court ordered DSS to investigate Childs living environment at Great Grandmothers home.  DSS visited the home the next day, and Great Grandmother informed DSS that Father also lived in her home, but he was not present at the time.  Later, DSS also learned that Great Grandmothers home had an extensive history with law enforcement.  Due to the conditions of the home, the court entered an ex parte order on April 17, 2006, ordering Child to enter DSS custody. 
 
On April 18, 2006, DSS initiated an action seeking removal of Child from Great Grandmothers home on the grounds that Mother, Father, and Great Grandmother abused and/or neglected Child.  Following the probable cause hearing, the court ordered Child to be placed in emergency protective custody with DSS because (1) probable cause existed to believe Child had been neglected or abused, (2) DSS exercised reasonable efforts to prevent Childs removal, and (3) continuation in Great Grandmothers home was not in Childs best interests. 
 
The family court held the removal hearing on June 22, 2006.[4]  On August 2, 2006, the family court found DSS had not established by a preponderance of the evidence that Child was abused or neglected by Father or Great Grandmother.  The family court found the home of Father and Great Grandmother was not a suitable environment for Child and returning her to the home would be contrary to her best interests.  Further, because Father had no court order determining his paternity as to Child, and Mother and Father were not married, the family court ordered temporary custody of Child to DSS pending the merits hearing in the case against Mother.  This appeal followed.
STANDARD OF REVIEW
In domestic matters, we may find facts based on the preponderance of the evidence, but we are not required to disregard the findings of the family court judge, who was in a better position to evaluate the witnesses testimony and credibility.  Doe v. Doe, 319 S.C. 151, 155, 459 S.E.2d 892, 894 (Ct. App. 1995).
LAW/ANALYSIS
A. Custody of children born out of wedlock
Before we address Fathers arguments, we must determine which parent has custody of Child.  Section 20-7-953(B) of the South Carolina Code (1976) provides:

 Unless the court orders otherwise, the custody of an illegitimate child is solely in the natural mother unless the mother has relinquished her rights to the child.  If paternity has been acknowledged or adjudicated, the father may petition the court for rights of visitation or custody in a proceeding before the court apart from an action to establish paternity.  
 

Neither party disputes that Mother and Father are not married nor that Child was conceived out of wedlock.  Based on these facts, the first sentence of the statute would place custody of Child with Mother.  The second sentence of the statute allows the Father to petition the court for custody if Father has acknowledged paternity.  The following excerpt illustrates Father acknowledged his paternity:

 [Court]:  Youre acknowledging youre the father?
 [Father]:  Yes.
 [Court]:  As the Father of this child, you do have an obligation to take care of it [sic] wherever it [sic] is.  Im going to put you under an order to pay child support. 
 

Father acknowledged paternity, thus the second sentence of section 20-7-953(B) allows him to petition the court for custody.  However, the record is devoid of any attempt by Father to seek custody of Child.  The following is a passage from the family court proceeding in which DSS investigator Vickie Cook is being questioned by the family court judge:

 [Court]:  Okay. And so at this point and time, I guess to your knowledge is there any custody order concerning [Child] other than the D.S.S. order, which took her into protective custody?
 [Cook]:  Thats the only order.  [Great Grandmother] . . . spoke of an attorney and that she was pursuing custody of [Child], but there was no order [regarding Child].

 The record reveals Father never sought custody of Child.  Further, the family court informed Father that he had a right to seek custody of Child.  Consequently, Father does not have custody of Child. 
 
B. Removal based on abuse or neglect
Father argues the family court erred in granting temporary legal and physical custody of Child to DSS because it did not comply with sections 20-736(F) and (I) of the South Carolina Code (Supp. 2006).  Subsection (F) states the family court:

 shall not order that a child be removed from the custody of the parent or guardian unless the court finds that the allegations of the petition[5] are supported by a preponderance of evidence including a finding that the child is an abused or neglected child . . .  and that retention of the child in or return of the  child to the home would place the child at unreasonable risk of harm affecting the childs life, physical health or safety, or mental well-being and the child cannot reasonably be protected from this harm without being removed. 
 

(emphasis added).
The statute applies only if Child is in Fathers custody.  As explained above, Father did not have custody of Child nor has Father sought custody.  Moreover, the case against Mother is pending.  Thus, section 20-7-736(F) is inapplicable.  
 

 Section 20-7-736(I) states: 
 If the court removes custody of the child, the courts order shall contain a finding by the court of whether reasonable efforts were made by the department to prevent removal of the child and a finding of whether continuation of the child in the home would be contrary to the welfare of the child.  The order shall state: (1) the services made available to the family before the removal of the child and how they related to the needs of the family; (2) the efforts of the agency to provide these services to the family before removal; (3) why the efforts to provide services did not eliminate the need for removal; and (4) whether the efforts to eliminate the need for removal were reasonable. . . .  If the departments first contact with the child occurred under such circumstances that reasonable services would not have allowed the child to remain safely in the home, the court shall find that removal of the child without services or without further services was reasonable.  
 

(emphasis added).
Once again, the statute applies only if Child is in Fathers custody.  As explained above, Father did not have custody of Child.  Thus, section 20-7-736(I) is inapplicable.  Additionally, given the fact that DSS took Child into protective custody pursuant to an ex parte order, this would not allow DSS sufficient time to provide services.  Therefore, under the circumstances, the efforts made by DSS to prevent removal were reasonable.  
 
C. The Moore[6] factors 
Father contends the family court erred because it failed to consider the Moore factors in determining that removal was in the best interests of Child.  Specifically, Father argues absent a finding that Child was abused or neglected or that Father is an unfit parent, the family court erred in concluding removal was in Childs best interests.
Our courts have typically used the Moore factors in actions in which a natural parent seeks to regain custody of a child after the parent has voluntarily surrendered custody of a child to a third person.  Charleston County Dept of Soc. Servs. v. King, 369 S.C. 96, 102, 631 S.E.2d 239, 242 (2006); Dodge v. Dodge, 332 S.C. 401, 411, 505 S.E.2d 344, 349 (Ct. App. 1998) (In Moore, the supreme court outlined the criteria to consider in determining custody when a natural parent seeks to reclaim custody from a third party.).  
 
However, in the present case, neither Father nor Mother voluntarily relinquished custody of Child.  Rather, the court ordered Child to be placed in emergency protective custody when DSS investigated Childs living environment, and the lower court found probable cause to remove Child from Father and Great Grandmothers home.  Thus, the Moore factors do not apply in the circumstances of the present case.  Accordingly, the family court did not err in failing to consider the Moore factors in its determination of Childs removal from the home.
[T]he welfare of the child and what is in his/her best interest is the primary, paramount and controlling consideration of the court in all child custody controversies.  Davis v. Davis, 356 S.C. 132, 135, 588 S.E.2d 102, 103-04 (2003) (internal citations and quotations omitted).  Father and Great Grandmother are the two named defendants.  The case against Mother is pending.  The issue of neglect, with respect to Mother, has not been fully litigated.  We hold it is in Childs best interests to remain in the custody of DSS while the case against Mother is resolved.  See Ex Parte Morris, 367 S.C. 56, 61-62, 624 S.E.2d 649, 652 (2006) (In an appeal from a family court order, an appellate court is not required to disregard the findings of the family court judge.  This degree of deference is especially true in cases involving a childs welfare and best interests.). 
 
CONCLUSION
Accordingly, the lower courts decision is 
AFFIRMED AS MODIFIED.[7]  

STILWELL, SHORT, and WILLIAMS, JJ., concur.

[1] The names of the minor child and the defendants have been changed to protect the minors identity. 
 
[2] Mother is not a party to this appeal. 
 
[3] Great Grandmother is not a party to this appeal. 
 
[4] On June 22, 2006, the family court heard the matter only as to Father and Great Grandmother.  The case was continued as to Mother because her court-appointed attorney was absent from the hearing.   
[5] Section 20-7-736(B) states DSS may petition the family court to remove the child from custody of the parent, guardian, or other person legally responsible for the childs welfare if [DSS] determines by a preponderance of evidence that the child is an abused or neglected child and that the child cannot be safely maintained in the home in that he cannot be protected from unreasonable risk of harm affecting the childs life, physical health, safety, or mental well-being without removal.   
 
[6] In Moore v. Moore, our Supreme Court established the following criteria to consider in making custody determinations when a parent seeks to reclaim custody: (1) the parent must prove that he or she is a fit parent, able to properly care for the child and provide a good home; (2) the amount of contact, in the form of visits, financial support or both, which the parent had with the child while it was in the care of the third party; (3) the circumstances under which temporary relinquishment occurred; and (4) the degree of attachment between the child and the temporary custodian.  300 S.C. 75, 79-80, 386 S.E.2d 456, 458 (1989).
[7] We decide this case without oral argument pursuant to Rule 215, SCACR.